IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Annie Mae Gilbert,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>Carolyn W. Colvin, Acting  )<br>Commissioner of Social Security,  )<br>)<br>Defendant.  )<br>_____  ) | Civil Action No.  2:14-00981-MGL-MGB<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The Plaintiff, Annie Mae Gilbert, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

## **RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

Plaintiff was 44 years old on her alleged disability onset date of January 1, 2011. (R. at 10, 19.) She alleged disability due to, *inter alia*, arthritis, chronic pain syndrome, edema, depression, shortness of breath, and obesity. (R. at 12.) Plaintiff attended some college and has past relevant work as an assembly line worker, store cashier, restaurant cook, van driver, glasser, janitor, and nurse's assistant. (R. at 35, 19.)

Plaintiff protectively filed an application for DIB and SSI on January 19, 2011. (R. at 10.) Her applications were denied initially and on reconsideration. (R. at 10.) After a hearing before an Administrative Law Judge (ALJ) on September 25, 2012, the ALJ issued a decision on October 26,

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

2012, in which the ALJ found that Plaintiff was not disabled. (R. at 10-21.) The Appeals Council denied Plaintiff's request for review (R. at 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)     The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.
>
> (2)     The claimant has not engaged in substantial gainful activity since January 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> (3)     The claimant has the following severe impairments: arthritis, chronic pain syndrome, mild edema, depression, shortness of breath, and morbid obesity (20 CFR 404.1520(c) and 416.920(c)).
>
> (4)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5)     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant is unable to climb ladders, ropes or scaffolds and must avoid odors, dusts, gases, fumes and limited to simple work.
>
> (6)     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> (7)     The claimant was born on October 28, 1966 and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> (8)     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> (9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

> (10)   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> (11)   The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). The Act also provides that supplemental security income (SSI) disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. See 42 U.S.C. § 1381 *et seq*. "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. See 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); 42 U.S.C. § 1382c(a)(3)(A) (definition used in the SSI context).[2]

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 4, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. See 20 C.F.R. § 404.1520 (DIB context); 20 C.F.R. § 416.920 (SSI context). If an individual is found not disabled at any step, further inquiry is unnecessary. See 20

---

[2] "[T]he definition of disability is the same under both DIB and SSI . . . ." Mason v. Colvin, Civ. A. No. 9:12-1157-TLW-BM, 2013 WL 4042188, at *2 n.2 (citing Emberlin v. Astrue, Civ. A. No. 06-4136, 2008 WL 565185, at *1 n.3 (D.S.D. Feb. 29, 2008)).

C.F.R. § 404.1520(a)(4) (DIB context); 20 C.F.R. § 416.920(a)(4) (SSI context); see also Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. See SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(I). He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. See Grant, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. See id. at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Richardson v. Perales, 402 U.S. 389 (1971); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

Smith v. Chater, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.

Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The Plaintiff contends that the ALJ erred in failing to find her disabled for several reasons. The undersigned addresses Plaintiff's allegations of error in turn.

### **A.     Explanation of RFC in Light of Mental Impairments**

Plaintiff contends the ALJ "failed to properly explain the RFC in light of [Plaintiff's] mental impairments." (Dkt. No. 22 at 15.) Plaintiff notes that while the ALJ "did perform a function by function assessment" of Plaintiff's mental impairments, "the assessment is not explained in the manner required by the regulations . . . ." (Dkt. No. 22 at 16.) Plaintiff complains that "[t]he only mental related restriction . . . the ALJ included in the RFC finding was that [Plaintiff] was restricted to 'simple work' which is presumably intended to restrict her to unskilled work." (Dkt. No. 22 at 17.) Plaintiff states,

> There were no restrictions relating to [Plaintiff's] ability to deal with the public or co-workers, no restrictions pertaining to her ability to handle stress, and no restriction pertaining to her ability to maintain concentration aside from the singular restriction to simple work.

(Id.) Plaintiff further asserts the ALJ's "determination that she only had mild difficulties in maintaining social function is not supported by the record cited by the ALJ." (Dkt. No. 22 at 18.)

The undersigned finds no reversible error. The Regulations provide guidance on evaluating mental impairments. See 20 C.F.R. § 404.1520a; 20 C.F.R. § 416.920a. The Regulations state, *inter alia*,

> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listing of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will

5

> use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

20 C.F.R. § 404.1520a(c); 20 C.F.R. § 416.920a(c). It is clear that the ALJ performed the required function by function assessment of Plaintiff's mental impairments. (See Dkt. No. 22 at 16; R. at 13-14.) Plaintiff points, however, to 20 C.F.R. § 404.1520a(e)(4) and 20 C.F.R. § 416.920a(e)(4) in asserting the "assessment is not explained in the manner required by the regulations . . . ." (Dkt. No. 22 at 16.) These regulations state,

> At the administrative law judge hearing and Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4); 20 C.F.R. § 416.920a(e)(4).

In performing the function-by-function assessment, the ALJ stated,

> In activities of daily living, the claimant has mild restriction. The claimant described her daily activities that included reading her bible, lying down, and watching television. (Exhibit B17E, p. 2) The claimant stated that she sits on the porch twice per week, she goes to church twice per month, and she goes shopping once per month. (Exhibit B17E, p. 4) In addition, the documentary medical evidence does not contain any references to problems with grooming or hygiene or any problems with activities of daily living because of a mental health impairment.
>
> In social functioning, the claimant has mild difficulties. The claimant's representative indicated that she is anxious around other people. During an examination at Polly Best Mental Health (Polly Best) on April 4, 2012, the claimant reported symptoms of social isolation, withdrawal, and being anxious when out in public. (Exhibit B22F, p. 2) However, the claimant stated she is able to use public transportation, go shopping, and attend church, indicating that she does not have a marked limitation in social functioning. (Exhibit B17E, p. 4)
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant indicated that she has difficulty following written or spoken instructions. (Exhibit B17E) The claimant also indicated that she has difficulty handling stress and changes in routine. (Exhibit B17E, p. 7)

> Treatment notes from Polly Best Mental Health dated April 4, 2012 state that the claimant's judgment and insight were good. The claimant's speech was normal and her attention, concentration, and memory were intact. The claimant was alert and oriented during the examination. Her thought process was logical and goal directed, and she did not exhibit any abnormal movements. (Exhibit B22F, p. 2)
>
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. The evidence does not show the claimant has ever had a psychiatric hospitalization, nor does the evidence show she has ever attended or been referred to a partial hospitalization program or ever resided in a halfway house or in another highly supportive living arrangement due to his [sic] alleged mental impairments. The claimant testified that she received mental health treatment at Polly Best for two years. During her visit on April 4, 2012, the claimant reported occasional auditory and visual hallucinations, but she state[d] that those had improved since being on the medication Seroquel. Additionally, the claimant did not have any delusions, suicidal ideation, or homicidal ideation (Exhibit B22F, p. 2)

(R. at 13-14.) Plaintiff faults the ALJ for referencing only one record–one from Polly Beth Mental Health dated April 4, 2012–in support of these findings. (Dkt. No. 22 at 16.) She asserts that the ALJ's "summary of this record is misleading and . . . fails to include treatment notes that are favorable to [Plaintiff's] claims of disability." (Dkt. No. 22 at 17.) She complains that the RFC does not contain restrictions "relating to [her] ability to deal with the public or co-workers, . . . pertaining to her ability to handle stress, and . . . pertaining to her ability to maintain concentration aside from . . . the singular restriction to simple work." (Id.)

Contrary to Plaintiff's arguments, the ALJ did not ignore treatment notes favorable to Plaintiff's claims of disability. (See Dkt. No. 22 at 17.) A fair reading of the ALJ's decision indicates that the ALJ considered all of the evidence to which Plaintiff points and included a discussion of that evidence in his written decision. (See Dkt. No. 22 at 17.) The ALJ noted Dr. Ford's December 2010 diagnosis of "major depressive disorder, single episode," and Plaintiff's Global Assessment of Functioning (GAF) score of 45. (R. at 437.) Dr. Ford indicated Plaintiff's judgment and insight were fair and prescribed Cymbalta. (R. at 437-38.) Plaintiff was seen again on May 18, 2011, where she reported to Dr. Ford that she had "some ongoing problems with dysphoria, crying spells about two to three times a month." (R. at 439.) Dr. Ford listed Plaintiff's GAF as 50 and indicated that Plaintiff

7

reported "she enjoys working in the garden and cooking on the grill." (R. at 439-40.) Dr. Ford listed Plaintiff's judgment and insight as good. (R. at 439.)

Plaintiff acknowledges the ALJ's discussion of the records from April 4, 2012, wherein Plaintiff reported "some ongoing depressive symptoms," including dysphoria, crying spells, social isolation and withdrawal, but also reported "some improvement with medications." (R. at 509; see also R. at 17.) The record of that visit indicates Plaintiff reported "occasional auditory and visual hallucinations but reported that these have improved since being on Seroquel." (R. at 509.) Dr. Ford listed Plaintiff's GAF score as 50. (R. at 510.)

> The ALJ further stated,
>
> The claimant's allegations of daily activities are not fully credible. The claimant testified that her niece helps her with her daily chores, her niece helps her in the tub, and either her husband or her niece makes her meals. However, the claimant lives alone in a mobile home, suggesting that she is not completely dependent upon others for her care and she is able to perform some daily activities independently. Furthermore, the claimant stated in May 2011 that she enjoyed working in the garden and cooking on the grill. These activities are inconsistent with the degree and duration of pain that the claimant alleges. Therefore, the undersigned finds that the claimant's daily activities do not support a finding of total disability.
>
> . . .
>
> Considering the claimant's mental impairments, progress notes from Polly Best indicate that the claimant's depression is improving with medication and therapy. The claimant's GAF score improved from 45 when she began treatment in December 2010 to 50 in April 2012. (Exhibit B13F, p. 14; Exhibit B22F, p. 3) On April 4, 2012, the claimant's mental examination revealed the claimant's judgment and insight were good, her thought process was logical and goal directed, and her attention, concentration, and memory were intact. While the claimant did report occasional auditory and visual hallucinations, she stated that her hallucinations had improved with the medication Seroquel. (Exhibit B22F, p. 2) Therefore, the undersigned finds that the claimant's depression is not as limiting as to preclude the claimant from performing basic work activity.
>
> Pursuant to SSR 96-6p, the Administrative Law Judge has considered the opinions rendered by the State agency medical consultants. On August 31, 2011, Janet Boland, Ph.D., a State agency psychological consultant, concluded that the claimant had moderate restrictions in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (Exhibit B16F) While the undersigned finds that the claimant does have a severe mental impairment, the record does not

8

> demonstrate that the claimant's activities of daily living and social functioning are limited to the extent that Dr. Boland concluded. Thus, the undersigned gives this opinion some weight.
>
> Dr. Boland opined that the claimant might have difficulty maintaining her concentration and pace on complex tasks; however, she should be able to attend to and perform simple tasks without special supervision. Dr. Boland found the claimant is able to attend work regularly, but she might miss an occasional day due to her mental conditions. She reported the claimant is able to relate appropriately to supervisors and co-workers, however, she might be better suited for jobs that do not require regular work with the general public. Dr. Boland stated the claimant is able to make work-related decisions and occupational adjustments, adhere to basic standards for hygiene and behavior, protect herself from normal work-place safety hazards, and use public transportation. (Exhibit B17F, p. 3) Dr. Boland's opinion is supported by the claimant's report of being anxious when out in public and the mental status examination at Exhibit B22F, p. 2 showing that the claimant's concentration and memory were intact and her insight and judgment were good.
>
> . . .
>
> By way of summary, the undersigned finds the residual functional capacity described above is supported by the record, when considered as a whole, and especially in light of the claimant's own description of his [sic] daily activities and testimony.

(R. at 18-19.)

While the Plaintiff clearly disagrees with the ALJ's analysis, and believes the RFC assessment is erroneous, the undersigned finds no reversible error. In a recent Fourth Circuit case, Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), the plaintiff argued that the ALJ presented a legally insufficient hypothetical to the vocational expert because the hypothetical said nothing about the plaintiff's mental limitations. See Mascio, 780 F.3d at 637. The Fourth Circuit noted that due to the VE's "unsolicited addition of 'unskilled work,'" the ALJ's hypothetical matched the ALJ's finding regarding RFC, so "the hypothetical was incomplete only if the ALJ failed to account for a relevant factor when determining [the plaintiff's] residual functional capacity." Id. at 637-38. The plaintiff asserted "that is precisely what happened—the ALJ did not consider her mental limitations despite crediting at step three [her] diagnosis of an adjustment disorder and also finding that [she] had moderate difficulties in maintaining her concentration, persistence, or pace as a side effect of her pain medication." Id. The Fourth Circuit remanded the case, stating,

9

> [W]e agree with other circuits that an ALJ does not account "for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits). As Mascio points out, the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.
>
> Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. <u>See id</u>. at 1181. But because the ALJ here gave no explanation, a remand is in order.

<u>Mascio</u>, 780 F.3d at 638. In <u>Winschel</u>, the Eleventh Circuit stated, *inter alia*,

> Other circuits have also rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work. *But when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. . . .*
>
> In this case, the ALJ determined at step two that Winschel's mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace. But the ALJ did not indicate that medical evidence suggested Winschel's ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical. Consequently, the ALJ should have explicitly included the limitation in his hypothetical question to the vocational expert.

<u>Winschel</u>, 631 F.3d at 1180-81 (citations omitted) (emphasis added).

The instant case is distinguishable from <u>Mascio</u> and <u>Winschel</u>. In <u>Mascio</u>, the ALJ concluded the plaintiff had a moderate limitation in concentration, persistence, or pace but did not include any corresponding limitation in the plaintiff's RFC, nor did the ALJ explain the reasons for not including such a limitation. In the case *sub judice*, however, the ALJ limited Plaintiff to "simple work," specifically relying on Dr. Boland's assessment that despite Plaintiff's "difficulty sustaining her concentration and pace on complex tasks," Plaintiff "should be able to . . . perform simple tasks without special supervision." (R. at 475; <u>see also</u> R. at 18-19.) Unlike in <u>Winschel</u>, the ALJ *did*

10

account for Plaintiff's limitations in the hypothetical and determining Plaintiff's RFC.[3] See Jarrett v. Comm'r, 422 F. App'x 869, 872 (11th Cir. 2011). The undersigned recommends concluding that the ALJ committed no reversible error in assessing Plaintiff's RFC in light of her mental impairments.[4] See also Tabalus v. Colvin, Civ. A. No. 8:13-CV-02211-BHH-JDA, 2015 WL 1186406, at *20 (D.S.C. Feb. 2, 2015), adopted at 2015 WL 1186411 (D.S.C. Mar. 26, 2015) ("[T]he ALJ accommodated Plaintiff's limitations in concentration, persistence and pace by limiting Plaintiff to simple, routine tasks." (citing Sensing v. Astrue, Civ. A. No. 6:10-cv-03084-RBH, 2012 WL 1016581 (D.S.C. Mar. 26, 2012))); Sensing, 2012 WL 1016581, at *6-7.

### B.    Explanation of RFC Regarding Avoidance of Odors, Dusts, Gases, and Fumes

Plaintiff asserts the ALJ concluded that Plaintiff must avoid the irritants of odors, dust, gases, and fumes "all together." (Dkt. No. 22 at 23.) Plaintiff contends that because the ALJ found that Plaintiff must completely avoid odors, dust, gases, and fumes, the ALJ erred in failing to address the impact of Social Security Ruling 85-15. (Id. at 23-24.)

The undersigned concludes Plaintiff's argument requires a strained reading of the ALJ's decision. Social Security Ruling 85-15 states, *inter alia*,

> Where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc.
>
> Where an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions.

---

[3] Specifically, the ALJ inquired of a hypothetical person, limited to sedentary work, with the same age, education, and past work as the Plaintiff. (R. at 52.) The ALJ indicated "[t]here should be no climbing of ladders, ropes, scaffolds, and there should be an avoidance of odors, dusts, gases, and fumes. There's also a limitation of simple work, routine tasks." (R. at 52.) Plaintiff had no past sedentary work, but when asked if there would be "other work given those limits," the VE indicated a person with those limitations could work as an order clerk; a ticket checker; and a wafer breaker, semiconductor. (R. at 52-53.)

[4] Plaintiff complains that the ALJ did not discuss Dr. Garde's notation that Plaintiff "ke[pt] her head down, "would not have an eye-to-eye contact," "kept stating she wanted to go home when she was . . . in the examination room," and stated that "she does not like to be around people." (See R. at 420-21.) Of course, Dr. Garde performed a "comprehensive orthopedic examination," not any sort of mental examination. (R. at 420-23.)

11

> Where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a VS.

SSR 85-15, 1985 WL 56857, at *8.

In the instant case, the ALJ concluded the Plaintiff "must avoid odors, dusts, gases, and fumes." (R. at 14.) But the ALJ's hypothetical questions posed to the VE included that exact same limitation. (See R. at 52-53.) Even with that limitation, the VE testified–and the ALJ concluded–that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. at 20.) The undersigned finds no reversible error here.

### C.     Explanation of RFC in Light of Need for Assistive Device

Plaintiff asserts the "ALJ did not find [Plaintiff] needed a cane in or[der] to stand or ambulate, and his finding is not explained in the hearing decision." (Dkt. No. 22 at 24.) Plaintiff states, "[T]he ALJ did not specify any reason for his RFC finding that Gilbert did not need a cane despite her allegations and the medical evidence." (Id.) According to Plaintiff, the case "must be remanded for proper consideration of the impact of the need for an assistive device on the range of work she can otherwise perform." (Dkt. No. 22 at 25-26.)

Defendant, on the other hand, argues that the RFC accounts for Plaintiff's use of a cane "by limiting Plaintiff to sedentary work with additional postural limitations." (Dkt. No. 24 at 15.) Defendant asserts the ALJ "analyzed Plaintiff's use of a cane as one fact to consider along with other medical evidence, and addressed Plaintiff's ability to ambulate generally." (Id. at 16.) Defendant contends that the ALJ relied on Dr. Garde's orthopedic examination and that there is substantial evidence "that, notwithstanding her prescription for a cane, Plaintiff's ability to ambulate was not impaired to the point that Plaintiff needed any additional limitations beyond allowing for sedentary work with no climbing of ladders, ropes, or scaffolds." (Id.)

As noted above, the ALJ concluded that Plaintiff has the RFC "to perform sedentary work . . . except the claimant is unable to climb ladders, ropes or scaffolds." (R. at 14.) The ALJ noted that on November 8, 2010, Plaintiff was seen at Family Medical complaining of weakness and feeling

unbalanced on her legs. (See R. at 15.) The ALJ further noted that Plaintiff reported she had fallen on occasions and was prescribed a cane. (Id.) The ALJ also described Dr. Garde's orthopedic examination in May of 2011:

> Dr. Vasant L. Garde performed a consultative orthopedic examination on May 4, 2011. The claimant presented with complaints of back pain and leg swelling since 2008, hypertension since 2008, anemia, elevated lipids, and bipolar disorder. The claimant stated that she had constant pain in her back and legs. She also stated that her legs were swollen and she felt numbness and tingling in both feet. . . . The claimant reported that she was able to sit for about 45 minutes, stand for about 30 minutes, and climb steps with railing. (Exhibit B12F, p. 4) . . . .
>
> Dr. Garde noted that the claimant was not in acute distress. He observed that the claimant walked from the waiting room to the examination room somewhat slowly with fairly normal gait using a four-pronged cane. (Exhibit B12F, p. 5) He stated that the claimant was able to walk without the four-pronged cane. Dr. Garde reported the claimant had minimal pitting edema in both lower extremities. The claimant had normal range of motion and there was no deformity, instability, or contractures. Straight leg raising was limited to 80 degrees on both sides. Dr. Garde found that the claimant's heel to toe walk was unremarkable and she could squat well. The claimant's motor function was equal and satisfactory on both sides with no evidence of atrophy, tremors, or fasciculations. Her reflexes were sluggish but there was no atrophy noted. Dr. Garde reported a clinical impression for chronic low back pain probably secondary to degenerative arthritis with probable lumbar radiculopathy, bipolar disorder, hypertension, anemia, and elevated lipids. (Exhibit B12F, pp. 6-7)

(R. at 16.) He also stated,

> On September 30, 2011, a State agency medical consultant concluded that the claimant was able to perform medium exertional work, except the claimant could not perform balancing. (Exhibit B18F) The undersigned agrees that the claimant is not completely physically disabled from working as of her alleged onset date, and has given the State Agency doctors partial weight in that regard. Nonetheless, the undersigned finds that the evidence of record warrants the even greater exertional limitations described in the residual functional capacity.

(R. at 19.)

Social Security Ruling 96-9p requires, *inter alia*, consideration of the impact of medically required hand-held assistive devices on the unskilled sedentary occupational base. SSR 96-9p, 1996 WL 374185, at *6-7. However, "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the

time, periodically, or only in certain situations . . . .).” Id. at *7. In this case, while a cane was prescribed to Plaintiff, the record contains evidence–upon which the ALJ relied–that the cane was not required. (See R. at 19; see also R. at 484, 422.) The undersigned therefore recommends finding the ALJ's decision is supported by substantial evidence. See, e.g., Boyd v. Astrue, Civ. A. No. 4:10-237-CMC-TER, 2011 WL 3652299, at *2 (D.S.C. Aug. 17, 2011) (remand not warranted where ALJ limited the plaintiff to sedentary work where plaintiff was prescribed cane but there was conflict in the record as to whether the plaintiff required the cane to walk; the court stated, *inter alia*, "Even assuming that Plaintiff does require a cane, there is no indication that use of a cane would prevent Plaintiff from performing the minimal standing, walking and carrying requirements of sedentary work.").

### D.     **Explanation of RFC in Light of Need to Elevate Legs**

Plaintiff contends it was error for the ALJ to "reject[] a finding that she would have a need to elevate her legs because an instruction to this effect was not provided in the medical record." (Dkt. No. 22 at 26.) Plaintiff testified at the hearing that Lucille Miller, CFNP, instructed Plaintiff to always keep her legs elevated when she was sitting. (Id.) Plaintiff asserts that she "was noted in the treating records to have . . . significant edema on a number of occasions," and "if the ALJ doubted [Plaintiff's] testimony it would have been very easy for the ALJ to send a request to Lucille Miller to confirm [Plaintiff's] testimony." (Dkt. No. 22 at 26-27.)

The ALJ noted Plaintiff's testimony that her doctor instructed her to always keep her legs elevated. (See R. at 18, 15.) He concluded, however, that Plaintiff did not have a totally disabling physical impairment:

> The objective evidence of record does not support the claimant's allegations. The claimant has only been treated conservatively with pain medications for osteoarthritis, back pain, and leg pain, suggesting that these conditions are not as disabling as the claimant has alleged. Furthermore, the claimant's physicians have not suggested advanced treatments such as steroid injections or surgery for her osteoarthritis and pain. The claimant testified that her doctor instructed her to always keep her legs elevated. However, the record does not contain documentation of any treating physician instructing the claimant to elevate her legs. In fact, the consultative examiner determined that the claimant had minimal pitting edema in her lower

>extremities. (Exhibit B12F, p. 6) Thus, the record does not show that the claimant's edema is as disabling as she has alleged. . . .

(R. at 18; see also R. at 422, 482.)

The undersigned finds no reversible error in the ALJ's analysis. Substantial evidence support's the ALJ's conclusion that Plaintiff's edema was mild, (see R. at 18, 422, 482), and the ALJ's failure to include a limitation in the Plaintiff's RFC concerning leg elevation does not warrant remand. See Wood v. Astrue, Civ. A. No. 4:10-927-CMC-TER, 2011 WL 4344113, at *4 (D.S.C. Sept. 14, 2011) (rejecting the plaintiff's argument that the ALJ failed to properly evaluate her RFC by ignoring the plaintiff's need to elevate her legs, stating, "[t]he ALJ did not ignore the issue of leg elevation. In fact, the ALJ mentioned in several sections of his decision that Plaintiff testified that she needed to elevate her legs. However, the ALJ did not find Plaintiff credible, and discounted her testimony appropriately. Plaintiff is unable to identify other records that indicate Plaintiff's need to elevate her legs while sitting, except one report from a visit with a non-treating physician. The ALJ weighed all of the evidence regarding leg elevation and substantial evidence supports his decision not to include leg elevation in Plaintiff's RFC." (footnote and citations omitted)).

### E.   **Evaluation of Plaintiff's Credibility**

Plaintiff notes the ALJ's determination that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "were not credible to the extent they were inconsistent with the residual functional capacity assessment," wherein the ALJ cited Plaintiff's "activities of daily living, stating that they are inconsistent with the degree and duration of pain that [Plaintiff] alleged." (Dkt. No. 22 at 28.) Plaintiff contends the ALJ's "assumption that [Plaintiff] was living alone and performing these activities independently seems misplaced" and that "[t]here is nothing about her stated activities or living arrangements that suggests she is not disabled . . . ." (Dkt. No. 22 at 28-29.) In addition, Plaintiff asserts the ALJ's "citation to conservative medical treatment does not provide a substantial basis to reject her credibility" in light of Plaintiff's inability to afford more extensive medical care. (Dkt. No. 22 at 30.)

15

> The ALJ stated, *inter alia*,
>
> > The claimant's allegations of daily living are not fully credible. The claimant testified that her niece helps her with her daily chores, her niece helps her in the tub, and either her husband or her niece makes her meals. However, the claimant lives alone in a mobile home, suggesting that she is not completely dependent upon others for her care and she is able to perform some daily activities independently. Furthermore, the claimant stated in May 2011 that she enjoyed working in the garden and cooking on the grill. These activities are inconsistent with the degree and duration of pain that the claimant alleges. Therefore, the undersigned finds that the claimant's daily activities do not support a finding of total disability.
> >
> > The objective evidence of record does not support the claimant's allegations. The claimant has only been treated conservatively with pain medications for her osteoarthritis, back pain, and leg pain, suggesting that these conditions are not as disabling as the claimant has alleged. Furthermore, the claimant's physicians have not suggested advanced treatments such as steroid injections or surgery for her osteoarthritis and pain. . . .

(R. at 18.)

The undersigned finds no error here. The ALJ did not commit reversible error in concluding that Plaintiff's allegations of pain were not fully credible in light of her activities. See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities including reading, cooking, attending church, cleaning house, doing laundry, and visiting were inconsistent with her complaints); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992); Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (finding activities such as driving his children to work, driving his wife to school, shopping, visiting his mother, taking a break with his wife between classes, watching television, and playing cards were inconsistent with plaintiff's complaints of disabling pain). Nor did the ALJ err in comparing the level of treatment prescribed to Plaintiff's allegations of disabling pain. See Dunn v. Colvin, —Fed. App'x—, 2015 WL 3451568, at *10 (4th Cir. June 1, 2015) ("[I]t is well settled in this circuit that the ALJ can consider the conservative nature of a claimant's treatment in making a credibility determination . . . ."); Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992)

(finding conservative treatment inconsistent with an allegation of disability).[5] In light of the foregoing, the undersigned concludes the Commissioner's decision is supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

June 19, 2015
Charleston, South Carolina

---

[5] As Defendant contends, the ALJ committed no error when he did not consider Plaintiff's "inability to afford more extensive care," as the ALJ did not base his conclusion on what Plaintiff could afford, or on failure to follow through on any prescribed treatment. (See Dkt. No. 24 at 19.) Instead, the ALJ noted that the prescribed treatment was conservative.